IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-483-FL

| | |
|---|---|
| ERIC WAYNE YOUNG and WILMA JEAN YOUNG, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| LAKE ROYALE PROPERTY OWNERS ASSOCIATION; LAKE ROYALE PRIVATE COMPANY POLICE; TRACY CLAY, Lake Royale Association Manager; NICOLE CLIFT, Lake Royale Building Inspector; RYAN WALKER, Lake Royale Board of Directors Member, and Former LRPOA President, Owner of Pine Ridge Realty; RAGSDALE LIGGETT PLLC, Lake Royale Attorneys, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     ORDER |
| Defendants. | ) |

This civil rights action wherein plaintiffs allege discriminatory and retaliatory housing practices is before the court on defendants' motions to dismiss the complaint. Defendant Ragsdale Liggett, PLLC ("Ragsdale") moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 21), and defendants Lake Royale Property Owners Association ("Association"), Lake Royale Private Company Police ("Company Police"), Tracy Clay ("Clay"), Nicole Clift ("Clift"), and Ryan Walker ("Walker") (collectively, "Lake Royale Defendants") move to dismiss pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) (DE 44). The motions have been briefed fully, and the issues raised are ripe for ruling. For the reasons that follow, the motions are granted.

## STATEMENT OF THE CASE

Plaintiffs commenced this action on October 31, 2019, by moving for leave to proceed in forma pauperis. On September 21, 2020, Magistrate Judge Kimberly A. Swank allowed plaintiffs to proceed in forma pauperis and, on frivolity review, recommended that portions of plaintiffs' claims be allowed to proceed against a limited number of defendants but that plaintiffs' other claims be dismissed.[1] The court adopted that recommendation by November 12, 2020, order. As allowed to proceed by that order, plaintiffs claim, under the Fair Housing Act ("FHA"), that defendants Association, Company Police, and the individual defendants, employees of the Association, discriminated and retaliated against plaintiffs. Plaintiffs further claim that defendant Ragsdale, which represented defendant Association in certain proceedings against plaintiffs, retaliated against them in violation of the FHA. Plaintiffs seek compensatory damages of either $1,000,00.00 or $2,000,000.00 and punitive damages in the amount of $15,000,000.00.

Defendant Ragsdale filed the instant motion to dismiss in December 2020, and the Lake Royale Defendants filed their motion the next month, relying upon a "Resident Transaction Report" for the Association. Plaintiffs timely responded to each motion, and defendants replied.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.[2] Plaintiffs are residential property owners in Lake Royale, a private residential community in Louisburg, North Carolina,

---

[1] Magistrate Judge Swank also denied without prejudice plaintiffs' motions to file certain evidence manually. (See M&R (DE 7) at 12-13).

[2] Plaintiffs filed over a dozen exhibits, consisting of over 250 pages, alongside their complaint, which the court treats as part of the pleadings, Fed. R. Civ. P. 10(c), referencing them where appropriate.

2

consisting of approximately 3,500 property owners. Plaintiffs purchased their home in 2010. A number of disputes have arisen between plaintiffs and defendant Association since that time.

Starting in 2013, plaintiffs began filing complaints with the Department of Housing and Urban Development ("HUD") and the North Carolina Human Relations Commission ("NCHRC"), alleging discrimination and retaliation for complaints to government agencies by defendant Association. They alleged this discrimination was on the basis of their race, black. (HUD Determination of No Reasonable Cause (DE 8-12) at 28 (HUD summary of plaintiffs' allegations); see also Compl. (DE 8) at 9 (relying on other summaries by HUD)).

Plaintiffs filed their first complaint of discrimination on September 12, 2013, which was amended on February 19, 2014, to add allegations of retaliation. (See HUD Determination of No Reasonable Cause (DE 8-12) at 28 (HUD summation of procedural history of complaint). The first alleged incident of discrimination, taking place by at least July 19, 2013, (see Pls.' HUD Compl. (DE 8-1) at 7), is described as relating to "building permit[s] and property inspection processes." (Compl. (DE 8) at 6). Plaintiffs allege they "were required to follow one set of rules and requirements[] but . . their white counterparts . . . [were] not require to follow those same rules and requirements." (Compl. (DE 8) at 8). While initially no permit requirements were described to plaintiffs, after they had purchased their property and begun "clearing trees off the property," defendant Clift "told them that they needed to stop working and get a permit." (HUD Determination of No Reasonable Cause (DE 8-12) at 29). Further, once plaintiffs sought the required permit, they ran into issues acquiring such due to purported problems regarding their septic tank being in violation and/or their porch being in violation of "Lake Royale rules and regulations," also related to permits. (Id. at 9). Plaintiffs' white neighbor is alleged to not have "been required to follow the same county [permitting] requirements." (Id.).

3

After filing their first administrative complaint, plaintiffs saw and learned of a "simulated man hanging from a tree" near "the main access road." (Id. at 7). The hanging figure or "decoration"[3] was reported to defendant Company Police and taken down from that property, but was then moved to another property. (Id.). Plaintiffs allege that defendant Association allowed the figure "to hang for weeks" in order to "discourage [plaintiffs] and other Lake Royale property owners from filing future complaints with HUD." (Id.).

After investigation, on June 23, 2014, HUD "determined that no reasonable cause exists to believe that a discriminatory housing practice ha[d] occurred," and it dismissed plaintiffs' administrative complaint. (See June 25, 2014, HUD Letter (DE 8-12) at 26; November 25, 2014, HUD Letter (DE 8-4) at 6). Upon plaintiffs' request for reconsideration, HUD concluded, on February 18, 2015, that "the No Reasonable Cause Determination issued in this matter was supported by the evidentiary record" and that, therefore, "[t]he original decision issued in the case was affirmed." (May 13, 2016, HUD Letter (DE 8-7) at 20; February 18, 2015, HUD Letter (DE 8-4) at 3).

On April 23, 2014, plaintiffs allege that defendant Association's security began requiring plaintiff Eric Young to show photo identification to enter the community although he had a pass that allowed him to enter automatically without having to present identification. (Pls.' April 26, 2014, Letter (DE 8-5) at 2). Plaintiff Eric Young disputed this requirement and was allowed to proceed to his home. (Id.). The next day, plaintiff Eric Young was, again, asked to show his identification. (Id.). He did not present his identification and, instead, presented his deed to his home and his pass. (Id.). Members of defendant Company Police were called to the scene, and plaintiff Eric Young called the "Franklin County police." (Id.). An officer of undescribed

---

[3] Review of the pictures of the hanging figure filed by plaintiffs reveals a figure in a tan or white coat, wearing leather boots and a hockey mask, made of black fabric. (See Photographs (DE 8-2) at 6-13).

4

affiliation arrived, and, after being let through the security gate, plaintiff Eric Young presented his identification to the officer.

On April 25, 2014, plaintiff Eric Young went to "the Lake Royale police department to ask for a copy of the police log referring to the incident" from the previous day. (Id. at 3). When he attempted to pass through the security gate to return to his home, he was again stopped and told to present his identification, which he did not do. Defendant Company Police sent an officer to respond to this incident, which resulted in plaintiff Eric Young's arrest for obstructing traffic. Plaintiff Eric Young was detained on a misdemeanor charge "with [a] $1,000.00 bond required for [his] release." (Id. at 4). Plaintiff Eric Young was kept in a cell for approximately 40 minutes before his bond was posted by his mother. On July 16, 2014, the prosecutor entered a dismissal of the obstructing traffic charge against plaintiff Eric Young. (Notice of Dismissal (DE 8-5) at 1).

On March 19, 2015, defendant Association held a "fining hearing" for plaintiffs' alleged non-compliance with "the Lake Royale Applicable Covenant/Rule/By-Law for Nuisance." (Def, Association's May 20, 2015, Letter (DE 8-4) at 1). A $50 fine was imposed and a recurring daily fine of $50 was set to take effect after March 25, 2015, for every day the alleged non-compliance went uncorrected. (Id.). By July 7, 2015, defendant Association informed plaintiffs that a lien would be placed on their property for an outstanding balance based on the alleged daily violations of defendant Association's rules. (NCHRC Determination (DE 8-11) at 5). Plaintiffs allege that they had attempted to pay the fines but that "a 'No Cash' policy" was implemented after they tried to pay in cash and that even after submitting certified bank checks, those checks were cashed but not applied to their accounts. (Id.; Compl. (DE 8) at 18). Plaintiffs allege that the refusal to credit their checks was in retaliation for the complaint to HUD and that other, white, residents were

allowed to pay their balances in cash. (NCHRC Determination (DE 8-11) at 5, 10; Compl. (DE 8) at 18).

Plaintiffs again filed complaints with HUD and NCHRC, dated August 14, 2015, regarding the fines and the conduct underlying their initial complaint to HUD. (See Def. Ragsdale's Aug. 28, 2015, Letter (DE 8-12) at 1; NCHRC Determination (DE 8-11) at 5). As part of defendant Association's official response to this complaint, it, through defendant Ragsdale, asked that NCHRC caution plaintiffs and "establish a gatekeeping process to prohibit them from continuing to make the same allegations against" defendant Association because plaintiffs "appear to be abusing the Commission's process by repeatedly making false discrimination claims . . . with no evidence." (Def. Ragsdale's August 28, 2015, Letter (DE 8-12) at 6). On August 30, 2016, NCHRC concluded that "there [were] no reasonable grounds to believe that an unlawful discriminatory housing practice [had] occurred," and it therefore dismissed plaintiffs' administrative complaint. (Aug. 30, 2016, NCHRC Letter (DE 8-11) at 3).[4]

On December 14, 2015, defendant Ragsdale, on behalf of defendant Association, sent a letter to plaintiffs formally demanding that they cease and desist in conduct that the letter describes as "disseminating . . . inaccurate information or allegations" and as defamatory. (Def. Ragsdale's December 14, 2015 Letter ((DE 8-10) at 1-2). The letter purports to be written in response to an October 19, 2015, letter sent by plaintiffs and others to the Franklin County Clerk of Court that alleged that defendant Association had engaged in criminal activity, made "false statements to state and federal officials," engaged in racial harassment and intimidation, falsified records, and other discriminatory conduct. (Id. at 1).

---

[4] Plaintiffs allege that another purportedly false arrest occurred the day after this investigation was completed, although it is unclear whether that date would be August 31, 2016, or August 7, 2016, based on the complaint and its attached exhibits. It is also unclear if this arrest is distinct from the other incidents described above.

In June 2016, a criminal complaint was filed against plaintiff Eric Young regarding a police report about the vandalization of plaintiffs' mailbox. (Compl. (DE 8) at 9; Pl. Eric Young's State Court Compl. (DE 8-13) at 26). Plaintiffs allege that defendant Association provided false information to a Franklin County magistrate that resulted in a warrant for plaintiff Eric Young's arrest on charges of filing a false police report. This warrant was executed June 16, 2016, and plaintiff Eric Young was arrested. At a later undescribed date, the Franklin County District Attorney dismissed the charges against plaintiff Eric Young and "stated to [plaintiffs'] attorney that he believed the arrest was an act of retaliation." (Compl. (DE 8) at 13).

On November 10, 2016, defendant Ragsdale notified plaintiffs that it, on behalf of defendant Association, had filed for foreclosure against their property, based on the aforementioned lien due to allegedly unpaid fines. (Def. Ragsdale's Nov. 10, 2016, Letter (DE 8-7) at 2). The action was ultimately dismissed voluntarily on May 2, 2017, by defendant Association through defendant Ragsdale. (Notice of Voluntary Dismissal (DE 8-7) at 21).

On December 13, 2016,[5] law enforcement engaged in a warrantless "raid on [plaintiffs'] home," and plaintiff Eric Young was arrested by defendant Company Police in conjunction with the Franklin County Sheriff's Department. (Compl. (DE 8) at 15). Defendant Company Police allegedly coordinated this arrest with defendant Association, defendant Clay, and defendant Association's board of directors. The arrest was a part of a multi-agency law enforcement operation entitled "Silent Night," aimed at "serv[ing] outstanding criminal warrants and conduct[ing] compliance checks on high risks and violent offenders on probation and parole in Franklin, Granville, Vance, and Warren counties." (December 16, 2016, News Article (DE 8-8)

---

[5] While the text of plaintiffs' complaint describes the date as "12/13/2019," (Compl. (DE 8) at 15), plaintiffs' exhibits indicate this is likely a typographical mistake as all other mentions of the arrest mention December 13, 2016, as the operative date. (See (DE 8-8) at 1-23).

7

at 17). Plaintiffs allege that law enforcement was at the "wrong house" and arrested the "wrong person," and that defendant Company Police knew that the planned raid was targeting "the wrong home and wrong person." (Compl. (DE 8) at 11-12).

While initially law enforcement left after searching plaintiffs' home and handcuffing plaintiff Eric Young, they later returned, arrested plaintiff Eric Young, and took him to Franklin County jail. Plaintiff Eric Young posted bond and was released that same day. According to the complaint, the Franklin County Sheriff later apologized for his department's participation in the raid and the alleged false arrest of plaintiff Eric Young. All records regarding the arrest allegedly were promised to be erased.

On October 13, 2017, defendant Ragsdale, again, on behalf of defendant Association sent a letter to plaintiff Eric Young demanding that plaintiff Eric Young cease and desist making allegedly defamatory statements about defendant Association, its board, defendant Clay, and defendant Company Police. (See Compl. (DE 8) at 20; Def. Ragsdale's Oct. 13, 2017, Letter (DE 8-13) at 9). The letter described these claims as being made on social media and alleged that plaintiff Eric Young disseminated a juvenile's personally identifiable information.

On November 7, 2017, plaintiff Eric Young, through his attorney, filed a verified complaint in state court against defendants Association and Company Police, asserting causes of action including punitive damages and malicious prosecution based on plaintiff Eric Young's June 16, 2016, arrest. (Pl. Eric Young's State Court Compl. (DE 8-13) at 26-29). The case was eventually dismissed without prejudice. (Compl. (DE 8) at 6).

Finally, on dates uncertain but taking place sometime in or after 2017, defendant Association is alleged to have disclosed plaintiffs' records in the form of signed personal checks

on defendant Association's website, and to have sought attorney's fees from plaintiffs. (Compl. (DE 8) at 17-19).

## DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

B.  Analysis

1.  Defendant Ragsdale's Motion to Dismiss

The FHA establishes that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" under the act. 42 U.S.C. § 3617. "To state a claim for retaliation under 42 U.S.C. § 3617 of the FHA, [a plaintiff] must establish that (1) she was engaged in protected activity; (2) [defendant] was aware of that activity; (3) [defendant] took adverse action against her; and (4) a causal connection existed between the protected activity and the asserted adverse action." Hall v. Greystar Mgmt. Servs., L.P., 637 F. App'x 93, 98 (4th Cir. 2016); see also 24 C.F.R. §

100.400(c)(5) ("Conduct made unlawful under this section includes . . . [r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act.").

Plaintiffs' retaliation claim against defendant Ragsdale must be dismissed because plaintiffs have failed to "allege facts sufficient to show a causal connection—namely, that the reason [defendant Ragsdale] took the actions it did was because of [their] protected activity." Hall, 637 F. App'x at 98 (emphasis added). None of the alleged conduct was undertaken by defendant Ragsdale because of plaintiffs' protected activity, on the facts alleged in the complaint. In the strictest sense, taking the facts alleged as true, defendant Ragsdale took the actions of filing the foreclosure action and sending cease-and-desist letters because of defendant Association's direction rather than any alleged retaliatory intent[6] on the part of defendant Ragsdale.

Further, not crediting plaintiffs' conclusory assertions of retaliatory intent by defendant Ragsdale, no reasonable inference arises from the factual matter in the complaint and attached exhibits that defendant Ragsdale's actions were impermissibly caused by plaintiffs' protected conduct. For example, the foreclosure action was instigated on the basis of a lien on their home stemming from unpaid fines, which are alleged to have been implemented with retaliatory intent by defendant Association, not defendant Ragsdale. See id. ("[R]etaliation . . . is not plausible in light of the 'obvious alternative explanation' . . . ." (quoting Iqbal, 556 U.S. at 682)). Similarly, the challenged cease-and-desist letters do not directly mention or give rise to an inference that they were sent in regard to plaintiffs' complaints to HUD and NCHRC and instead target plaintiffs' alleged comments on online public forums and elsewhere.

---

[6] The court assumes without deciding that retaliatory intent as opposed to discriminatory intent would suffice for a § 3617 claim, an apparently open question. See generally Campbell v. Robb, 162 F. App'x 460, 473 (6th Cir. 2006) (describing differing conclusions among the circuit courts).

10

Plaintiffs fail to point to any factual allegations that would give rise to an inference of retaliatory causation beyond bare assertions devoid of further factual enhancement.[7] See Hall, 637 F. App'x at 99 ("In evaluating a retaliation claim, however, a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred very close to or shortly after the defendant became aware of the protected activity." (quotations omitted)). Such fails to state a claim upon which relief may be granted. Accordingly, plaintiffs' FHA claim against defendant Ragsdale is dismissed without prejudice.

Plaintiffs assert in their complaint, as part of a discussion on the hanging figure incident, that defendants "motive for retaliation was later confirmed in a[] discrimination/retaliation investigation, when the LRPOA/BOD, made a request to North Carolina Human Relation Commission, HUD agent, to place a 'gatekeeping process' around the Youngs so they could not file civil rights complaints." (Compl. (DE 8) at 8). This is presumably a reference to defendant Association's response, penned by defendant Ragsdale, to plaintiffs' August 2015 complaint to NCHRC, as sent to NCHRC. However, it is not clear that the mere request would constitute an "adverse action" within the meaning of Hall, or the statute's prohibition on coercion, intimidation, threats, and interference with plaintiffs' FHA rights.

Plaintiffs cite an exhibit attached to their complaint they allege indicate that defendant Ragsdale sought attorneys' fees from them for filing complaints with HUD. (Pls.' Resp. (DE 39) at 8). It is not immediately clear that seeking attorneys' fees could even be considered an adverse action given that the FHA specifically envisions the grant of attorney's fees to the prevailing party, including in actions before HUD. See 42 U.S.C. § 3613(c)(2); 24 C.F.R. § 14.105 ("The Act

---

[7] Plaintiffs' citation to Martin v. Brondum, a non-retaliation case, does not alter this calculus as they, like the plaintiffs in Martin, have not pointed to "[d]irect evidence encompass[ing] conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [housing] decision." 535 F. App'x 242, 244 (4th Cir. 2013).

11

provides for the award of attorney fees and other expenses to eligible individuals and entities who are parties to certain administrative proceedings (adversary adjudications) before [HUD]."). Further, the cited document reveals plaintiff Eric Young's recounting on an online forum of a comment allegedly by defendant Clay stating that "attorney invoices were applied to the Young's account for filing 'HUD, NCHRC, and U.S. Department of Justice complaints.'" (Forum Posts (DE 8-13) at 4). However, this describes no action by or, more importantly, intent of defendant Ragsdale, even accepting such a factual allegation as true.

In their response, plaintiffs focus on asserting that defendant Ragsdale knew or should have known that the cease-and-desist letters contained false comments and that they committed fraud or violated the False Claims Act, 31 U.S.C. § 3729. Such claims are not properly before the court as they are not a part of the complaint screened by the court for frivolity pursuant to 28 U.S.C. §1915(e)(2)(B).[8] Further, as to plaintiffs' citations to the American Bar Association's Model Rules of Professional Conduct, "[c]ourts have consistently refused to use ethical codes to define standards of civil liability for lawyers." Schatz, 943 F.2d at 492.

In sum, plaintiffs' claim against defendant Ragsdale must be dismissed. Further, where there is no indication that the deficiencies in plaintiff's claim against defendant Ragsdale reasonably can be cured through amendment, dismissal in this instance is with prejudice.[9]

  2. Lake Royale Defendants' Motion to Dismiss

    a. Statute of Limitations

---

[8] The same is true of any other claims of § 1985 conspiracy implied by plaintiffs' response.

[9] Because the court concludes that plaintiffs fail to state a plausible claim for relief against defendant Ragsdale, it does not consider whether plaintiffs' claims against defendant Ragsdale are barred by the relevant statute of limitations.

12

Under the FHA's statute of limitations, an aggrieved individual must commence an FHA action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A); see also A Soc'y Without A Name v. Virginia, 655 F.3d 342, 349-50 (4th Cir. 2011) (explaining that "FHA claims . . . have a two-year statute of limitations," and the resultant time-bar can serve as a basis for failure to state a claim upon which relief can be granted). "The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination." A Soc'y Without A Name, 655 F.3d at 348. "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (quotation omitted).

Accordingly, any claim by plaintiffs of injury-causing conduct taking place prior to October 31, 2017, (two years before this action was commenced) generally is time-barred by the applicable statute of limitations.[10]

As an exception to this rule, "[t]he continuing violation theory allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). However, "to establish a continuing violation, the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." A Soc'y Without A Name, 655 F.3d at 348 (quotation omitted); see also Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1167 (4th Cir. 1991) ("The challenged action must be repeated within the statute of limitations period."). And

---

[10] While the "computation of such 2-year period shall not include any time during which an administrative proceeding" pursuant to the FHA "was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice," 42 U.S.C. § 3613(a)(1)(B), the court's review does not indicate, even taking such tolling in account and interpreting it liberally, this provision would alter the time-bar analysis here. (See, e.g., Compl. (DE 8) at 1, 10-11 (describing original discrimination report to HUD, which attachments to the complaint reveal was filed September 12, 2013, and resolved conclusively by February 18, 2015); id. at 18 (describing subsequent investigation by NCHRC, which the exhibits to the complaint indicate was instigated August 14, 2015, and resolved August 30, 2016)).

13

the United States Court of Appeals for the Fourth Circuit has "declined to extend the limitations periods for discrete acts of discrimination merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination." Holland, 487 F.3d at 220; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act . . . .").

Here, plaintiffs' factual allegations do not describe a "series of separate acts that collectively" give rise to a cause of action, rather, each alleged discrete act of discrimination or retaliation would predicate a distinct claim under the FHA. Morgan, 536 U.S. at 117; A Soc'y Without A Name, 655 F.3d at 348 ("The first action does not establish a continuing violation because it is an allegation of an entirely new violation."). Further, per plaintiffs' own description, the alleged conduct is only "obliquely" connected. (Pls.' Resp. (DE 47) at 7).

Therefore, those parts of plaintiffs' claim against the Lake Royale Defendants based on conduct preceding October 31, 2017, are dismissed with prejudice as time barred. This includes all asserted parts of plaintiffs' claim except for the following alleged incidents taking place after October 31, 2017. In particular, the only instances of alleged conduct giving basis to a timely, potential FHA retaliation claim are: 1) the alleged placement of images of plaintiffs' personal checks on defendant Association's website, taking place in unclear time period based on the complaint but ostensibly sometime in 2017 based on the parties' briefing. (see Lake Royale Defs. Mem. (DE 45) at 9; Pls.' Resp. (DE 47) at 4, 13); 2) the application of "attorney invoices to the Young's account" also described as requiring plaintiffs to pay "attorney fees," taking time some place in 2018, (see Compl. (DE 8) at 19, 21; Forum Posts (DE 8-13) at 4); and 3) placement of plaintiffs' in "bad standing with the Lake Royale Community," which took place in May 2018,

14

(Compl. (DE 8) at 19; Defendant Association's May 7, 2018, Letter (DE 8-13) at 46).[11] The court proceeds in the next section to analyze the viability of plaintiff's retaliation claim premised on those discrete alleged incidents.[12]

As to plaintiffs' assertion in response to the instant motion to dismiss that plaintiff Eric Young "endured . . . a fourth attempt at a false arrest as recently as October 7th, 2020[,]" (Pls. Resp. (DE 47) at 10), a party may not "raise new facts . . . beyond the pleadings" to "be considered on a Rule 12(b)(6) motion." Cf. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011) (analyzing statements by counsel that raised new facts in response to Rule 12 motion to dismiss). There is no allegation of this arrest in plaintiffs' complaint, assumedly because it took place after its filing, and therefore it is not considered in the court's analysis of the Lake Royale Defendants' motion to dismiss plaintiffs' October 31, 2019, complaint.

    b.      Failure to State a Claim

         i.      Posting Images of Plaintiffs' Checks

As noted above, "[t]o state a claim for retaliation under 42 U.S.C. § 3617 of the FHA, [a plaintiff] must establish that (1) she was engaged in protected activity; (2) [defendant] was aware of that activity; (3) [defendant] took adverse action against her; and (4) a causal connection existed between the protected activity and the asserted adverse action." Hall, 637 F. App'x at 98 (citing King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003)). Because of the similar language and

---

[11] Again, certain acts are alleged in the complaint to have taken place in 2019, see e.g., (Compl. (DE 8) at 15 (describing plaintiffs' third alleged arrest as taking place on December 13, 2019), 20 (describing defendant Ragsdale's second cease and desist letter as being sent on October 13, 2019)), but these appear to be typographical errors based on the alleged time periods (e.g., defendant Clay is alleged to have stated something about a cease and desist letter before it even existed and plaintiff Eric Young is alleged to have been arrested in a complaint filed before the arrest allegedly happened), and exhibits attached to the complaint.

[12] Further, these claims are analyzed only as to whether they state a claim of FHA retaliation rather than FHA discrimination because the complaint only ascribes retaliatory intent to these acts. (See, e.g., Compl. (DE 8) at 17 ("Retaliation invasion of privacy-placing personal checks on a public website"); 19 ("Retaliation against the Young's with use of false attorney fees")).

anti-discriminatory purpose of the two statutory schemes, courts have relied on Title VII principles in analyzing FHA claims. See, e.g., Betsey v. Turtle Creek Assocs., 736 F.2d 983, 987 (4th Cir. 1984) ("[C]ourts of appeals have recognized the parallel objectives of Title VII and Title VIII."); Smith v. Town of Clarkton, 682 F.2d 1055, 1065 (4th Cir. 1982) ("[T]he anti-discrimination objectives of Title VIII are parallel to the goals of Title VII . . . .").

Accordingly, the court, here, looks to Title VII legal principles regarding the requirement in Title VII retaliation cases that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (emphasis added); see Geraci v. Union Square Condo. Ass'n, 891 F.3d 274, 277 (7th Cir. 2018) (applying Burlington to the FHA retaliation context); cf. Evans v. Int'l Paper Co., 936 F.3d 183, 195 (4th Cir. 2019) (applying Burlington to King's Title VII retaliation elements). The court then looks to an analogous requirement that an FHA plaintiff show that a reasonable claimant would have found the challenged action materially adverse, that is, it would dissuade reasonable individuals from making or supporting an FHA charge.

As an initial matter, any adversity caused by or reasonably deterrent effect of the Lake Royal's defendants' allegedly invasive posting of plaintiffs' personal checks is undercut by plaintiffs' own addition of the checks in their public filings with the court. (See (DE 8-12) at 48).

Further, plaintiffs allege that this information was disclosed as part of a 55-page file posted on defendant Association's website, seemingly as a review of the dispute undergirding and arising from plaintiffs' HUD complaint. (See Compl. (DE 8) at 17; (DE 8-12) at 1-55)). In the context of the facts alleged in the complaint, the court cannot conclude that the disclosure of litigation

16

materials' inclusion of a personal check of a former FHA complainant, standing on its own, constitutes a materially adverse action as required for FHA retaliation. Cf. Forgus v. Mattis, 753 F. App'x 150, 153 (4th Cir. 2018) ("To establish that [d]efendant's actions were sufficiently adverse, [plaintiff] was required to allege facts sufficient to allow an inference that a reasonable employee would have found the challenged action[s] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (quotation omitted)). The alleged disclosure of a personal check containing plaintiffs' financial account info, while imprudent, when taken in the context of the entire documents and posting, does not allow an inference of sufficient adversity — that is, an action likely to deter victims of FHA discrimination from complaining to HUD. Cf. Burlington, 548 U.S. at 67, 68 ("[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence.").

Plaintiffs also fail to allege beyond conclusory assertions of retaliatory intent any basis for an inference, rather than speculative curiosity, to arise that the posting of the check, the specifically complained-of conduct, was made to retaliate impermissibly against plaintiffs specifically for their HUD and NCHRC complaints. Responding to an FHA administrative complaint is, of course, different from impermissibly retaliating for an FHA administrative complaint, and plaintiffs' complaint does not "nudge[] [their] claims of invidious discrimination" or retaliation "across the line from conceivable to plausible." Iqbal, 556 U.S. at 680 (quotation omitted); see also id. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

17

Case 5:19-cv-00483-FL Document 49 Filed 08/27/21 Page 17 of 20

ii. Attorney's Fees

It is not perfectly clear from the complaint what underlying legal work premised the attorneys' fees allegedly sought by the Lake Royale Defendants — e.g., responding to plaintiffs' complaints to HUD and NCHRC, (see, e.g., Compl. (DE 8) at 19 ("[T]he Young's were required to pay attorney fees . . . because the Young's filed complaints with [HUD], NCHRC and the [U.S.] Department of Justice."); Forum Posts (DE 8-13) at 4 ("The attorney invoices were applied to Young's account for filing 'Hud, NCHRC, and U.S. Department of Justice complaints' . . . .")), or responding to plaintiff Eric Young's 2017 lawsuit against certain Lake Royale Defendants, (see, e.g., Compl. (DE 8) at 19 (referencing as relevant exhibit to their claim of retaliatory attorney fees, the voluntarily dismissed 2017 lawsuit); Forum Posts (DE 8-13) at 4 ("The attorney fees on your account were from the associations attorney preparing for [the 2017 complaint].")). Further, the court's research does not reveal any binding case law suggesting that seeking attorneys' fees in the course of litigation can constitute a retaliatory act within the meaning of § 3617, and, as stated before, the FHA and regulations promulgated pursuant to the act specifically envision that attorneys' fees may be granted.

Instead, plaintiffs rely on bare assertions of retaliatory intent in defendants' alleged seeking of attorneys' fees that are not joined by concrete factual allegations from which impermissible retaliatory intent could be inferred. While plaintiffs assert that the attorneys' fess assessed or invoiced against them were "unlawful," (see, e.g., Compl. (DE 8) at 19), the court cannot accept legal conclusions couched as factual allegations in considering whether a complaint states a claim. See Nemet, 591 F.3d at 255. The complaint contains no factual assertions that raise an inference of the unlawful nature of the attorneys' fees or an otherwise prohibited basis in defendants' seeking those fees. Therefore, plaintiffs' retaliation claim, in so far as it is based on the disputed attorneys'

fees, does not state a claim upon which relief can be granted under the FHA's antiretaliation provision as the harm alleged is beyond the scope of that section. Cf. Burlington, 548 U.S. at 67 (explaining that Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm" actionable under that statutory scheme).

    iii.  Bad Standing with Defendant Association

Assuming that plaintiffs' claim on FHA retaliation is independently premised on defendant Association's placement of plaintiffs in "bad standing," which suspended plaintiffs' use of certain community amenities, (see Def. Association's May 7, 2018, Letter (DE 8-13) at 46), such alleged facts, too, fail to state a claim upon which relief can be granted pursuant to the FHA's antiretaliation provision. Namely, plaintiffs' claim on this basis fails because they do not provide factual allegations leading to an inference that any of the Lake Royale Defendants "took the action" of placing plaintiffs in bad standing "because of [plaintiffs'] protected activity," that is, filing administrative FHA complaints. See Hall, 637 F. App'x at 98. Rather, the complaint on its face states that, despite plaintiffs' earlier assertion that they were "placed in bad standing . . . because [they] filed complaints," plaintiffs were placed in "bad standing with the community until the unlawful attorney fees were paid." (Compl. (DE 8) at 19). The complaint fails to plausibly allege that a "causal connection exist[s] between the protected activity and the asserted adverse action," and, therefore, it fails to state a claim of FHA retaliation on the basis of plaintiffs being placed in bad standing.

In sum, the complaint does not contain factual matter regarding any conduct which is timely challenged by plaintiffs sufficient to state a retaliation claim under the FHA. Accordingly, plaintiffs' claims based on those instances of conduct are dismissed without prejudice. Further, where there is no indication that the deficiencies in plaintiff's claim against the Lake Royale

19

Case 5:19-cv-00483-FL  Document 49  Filed 08/27/21  Page 19 of 20

Defendants reasonably can be cured through amendment, dismissal in this instance is with prejudice.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss are GRANTED (DE 21, 44), and plaintiffs' claims are DISMISSED WITH PREJUDICE. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of August, 2021.

                                                LOUISE W. FLANAGAN
                                                United States District Judge